UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE GOODYEAR TIRE & RUBBER COMPANY, | ) ) | CASE NO. 5:08CV1789 |
| Plaintiff, | ) ) | JUDGE CHRISTOPHER A. BOYKO |
| vs. | ) ) | OPINION AND ORDER |
| NATIONAL UNION INSURANCE COMPANY OF PITTSBURGH, et al., Defendants. | ) ) ) ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #103) of Defendant Federal Insurance Company ("Federal") for Summary Judgment. For the following reasons, the Motion is granted.

**I. FACTUAL BACKGROUND**

The Goodyear Tire & Rubber Company ("Goodyear") instituted this lawsuit in July of 2008, and filed its Amended Complaint on March 23, 2009. Count I alleges breach of directors and officers ("D & O") liability policies issued by National Union Insurance Company of Pittsburgh ("National Union") and Federal; and seeks reimbursement of

Goodyear's legal and accounting costs, amounting to approximately $30 million, incurred in defending numerous securities class action and derivative lawsuits and an SEC investigation. Count II, which sought a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, against Federal only, was dismissed by the Court's Opinion and Order issued on October 23, 2009. (ECF DKT #37).

Subject to its terms, conditions and limitations, the National Union Policy has an aggregate limit of liability of $15 million, and a $5 million retention for Securities Claims. The Federal Policy has an aggregate limit of liability of $10 million, that is excess of the National Union Policy limit of liability and applicable retention.

The insuring agreement of the Federal Policy recites:

The Company shall provide the Insureds with insurance during the Policy Period excess of the Underlying Limit. Coverage hereunder *shall attach only after the insurers of the Underlying Insurance shall have paid in legal currency the full amount of the Underlying Limit* for such Policy Period. (Emphasis added).

At Section 3, the Federal Policy further provides:

Only in the event of exhaustion of the Underlying Limit by reason of the insurers of the Underlying Insurance, or the Insureds in the event of financial impairment or insolvency of an insurer of the Underlying Insurance, paying in legal currency loss which, except for the amount thereof, would have been covered hereunder, this policy shall continue in force as primary insurance, subject to its terms and conditions and any retention applicable to the Primary Policy, which retention shall be applied to any subsequent loss in the same manner as specified in the Primary Policy.

In the course of this litigation, on July 16, 2010, Goodyear informed Federal and the Court that it had entered into a settlement with National Union, for $10 million and some non-monetary considerations.

Following that, the Court overruled as moot all of the parties' pending motions, and

-2-

granted leave until September 7, 2010 to file renewed dispositive motions, including arguments and applicable law on settlement and exhaustion. (ECF DKT #102). Those motions have been filed and fully briefed. Federal argues: (1) The Federal Policy does not attach because the National Union Policy was not fully exhausted; (2) The disputed fees did not "result solely" from a "claim" against an insured; (3) The "related claims" provision does not create coverage for Goodyear's internal investigation or the SEC investigation; (4) Goodyear did not seek or obtain Federal's consent to incur the disputed fees; and (5) The disputed fees incurred for Goodyear's overseas internal investigation were not reasonable and necessary to the defense of the litigation or SEC investigation. Goodyear counters: (1) Under Ohio law, a policy condition requiring exhaustion of the limits of another policy before the insurer pays cannot result in a forfeiture of coverage, at least where the insurer has not been prejudiced by the other policy's failure to pay limits; (2) It is uncontroverted that the disputed defense costs resulted solely from the investigation and defense of a claim; (3) By treating all related claims as having been made at the same time, National Union's clause 7(B) is designed to avoid any issue of "pre-claim" expenses or allocation of defense costs incurred in the defense of the same wrongful act; (4) Federal has no basis to assert consent as a defense; and (5) Examination of overseas accounting irregularities was necessary to the SEC investigation, and Federal's unsupported assertion to the contrary raises at most a question of fact for the jury.

## II. LAW AND ANALYSIS

### Civil Rule 56 Standard

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994). The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited (by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir.2003)(quoting *Anderson*, 477 U.S. at 251-52).

### Applicable law

A federal court sitting in diversity must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir.2000).  In this case, Ohio law governs.

**Contract Interpretation**

The Supreme Court of Ohio has instructed that "insurance contracts must be construed in accordance with the same rules as other written contracts." *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 597 N.E.2d 1096, 1102 (1992), *cert. denied*, 507 U.S. 987, 113 S.Ct. 1585, 123 L.Ed.2d 152 (1993).  Furthermore, "words and phrases used in an insurance policy must be given their natural and commonly accepted meaning *** to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 436 N.E.2d 1347, 1348 (1982).

The Court must interpret the contract as a whole.  *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219 (2003).  "If the language used by the parties [in a contract] is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone."  Williston on Contracts § 31:4.  "When the terms of the contract are clear and unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."  *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638 (1992).  In a fully integrated agreement, intentions not expressed in the writing are deemed to have no existence.  *Construction Interior Systems, Inc. v. Marriott Family Restaurants, Inc.*, 984 F.2d 749, 754 (6th Cir. 1993) (quoting *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51 (1989)) (interior citations

omitted).

To reiterate, the Federal Policy coverage attaches "only after the insurers of the underlying insurance shall have paid in legal currency the full amount of the underlying limit for such policy period." The parties do not dispute that the underlying insurer, National Union, paid Goodyear $10 million in settlement; while its policy limit for the relevant coverage period was $15 million, with a $5 million self-insured retention.

Goodyear insists that Federal's exhaustion provision is unenforceable, because the interest in enforcing it is outweighed by the strong Ohio public policy favoring settlements. An Ohio appellate panel addressed this principle of public policy, and cited the Ohio Supreme Court's decision in *Bogan v. Progressive Casualty Insurance Co.*, 36 Ohio St.3d 22 (1988), saying:

> It is uncontroverted that public policy favors settlement. When parties agree to settle cases, litigation is avoided, costs of litigation are contained, and the legal system is relieved of the burden of resolving the dispute with the resulting effect of alleviating an already overcrowded docket. When the amount of settlement is less than the policy limits, the unpaid amount may represent a significant savings cost since litigation was avoided or curtailed . . . Thus, separate from the contract of insurance, considerations of public policy generally favor settlements. *Triplett v. Rosen*, Nos. 92AP-816 & 92AP-817, 1992 WL 394867, at *18-19 (10th Dist. Dec.29, 1992).

The Court recognizes this compelling public policy and the line of Ohio cases espousing it; yet, will not go so far as to find Federal's contract provision unenforceable. The Court agrees, first, with Federal's position that this Ohio precedent almost exclusively arose in the context of uninsured/underinsured motorist litigation. The language of those types of policies is clearly distinguishable from the language of the D & O policy before us. Moreover, Ohio state law mandates uninsured/underinsured coverage; thus motivating courts to find coverage

wherever possible.  There is no similar statutory mandate with regard to business and commercial excess liability coverage.  Thus, although there is a substantial public interest in encouraging settlements, the Court finds an equally potent interest in fostering freedom of contract and holding parties to the agreements they make.

Goodyear further argues that settlement for an amount less than the full limits of the underlying limits is a failure of a condition precedent, which can result in the forfeiture of coverage *only* where the excess insurer is prejudiced.  Goodyear contends that Federal is not prejudiced.  Goodyear intends to prove it suffered losses exceeding the limits of the underlying National Union Policy; and thus, Federal would only ever have to pay the amount it agreed to pay.  The Court does not agree.  Federal is indeed prejudiced.  It has been required to litigate since the inception of this suit in state court in 2008.  Approximately two years ago, Federal briefed, and successfully obtained, dismissal of Count II of the Complaint for Declaratory Judgment on the exhaustion provision.  Federal, National Union and Goodyear attempted mediation, pursued vigorous discovery, and briefed summary judgment.  Then, following the settlement with National Union, the summary judgment briefing was repeated, leading the Court to this stage.  Would these significant litigation efforts have been necessary *but for* Goodyear's insistence that the underlying policy limits were exhausted by a less-than-the-limits settlement?

Placing itself in the shoes of an insurer for a moment, the Court recognizes the realities of defining the scope of coverages and setting premiums accordingly.  Certainly, the potential exposure of an excess insurance provider and the triggering point of that exposure inform the calculus used in setting the premiums the insured will be charged.  Will coverage

be triggered by losses amounting to $20 million ... $15 million ... or $10 million?  An excess insurer, in the Court's opinion, is entitled to at least that degree of certainty.  Here, Federal's expectation was a triggering point of $15 million plus the $5 million self-insured retention.  Federal based the premium it charged Goodyear on that expectation, not some lesser amount.  Therefore, Federal has suffered real prejudice.

Goodyear and Federal are commercial enterprises of such size and quality as to presumably possess a high degree of sophistication in matters of contract.  Each has the ability to retain highly competent counsel, skilled in negotiating and/or drafting insurance contract terms and advising on the impact of inserting or deleting coverage provisions.  Additionally, in this free market society, Goodyear could have "shopped around" to other excess insurance providers for a different, broader exhaustion clause.

Finally, in the Court's view, the plain language of the Federal Policy's insuring clause — "the full amount of the underlying limit"  —  does not mean "some lesser amount" or "partial amount," nor does it contemplate the insured "filling the gap" or "crediting the difference."

### III. CONCLUSION

Therefore, the Court finds, as a matter of law, that coverage under the Federal Policy does not attach because the underlying insurer, National Union, did not pay, in legal currency, the full amount of its Policy limit.  Since the clear and plain language of the Federal Policy's insuring clause drives this Court's conclusion, the Court need not address any other issues, including claims or related claims, consent, and reasonable and necessary expenses and costs.  The Motion (ECF DKT #103) of Defendant Federal Insurance Company for Summary

Judgment is granted. The Amended Complaint of Plaintiff Goodyear Tire & Rubber Company is dismissed. The Motion (ECF DKT #108) of Plaintiff Goodyear Tire & Rubber Company for Partial Summary Judgment is denied. The Motion (ECF DKT #123 of Defendant Federal Insurance Company to Strike the Expert Report and Exclude the Testimony of Tom Baker is denied as moot.

**IT IS SO ORDERED.**

**DATE: September 19, 2011**

 S/Christopher A. Boyko
**CHRISTOPHER A. BOYKO
United States District Judge**